[No Oral Argument Date Scheduled]

No. 13–1136

_____
_____

IN THE UNITED STATES COURT OF APPEALS
FOR THE DISTRICT OF COLUMBIA CIRCUIT
_____

JOSEPH F. SHEBLE III,

Petitioner,

v.

MICHAEL P. HUERTA, Administrator,
FEDERAL AVIATION ADMINISTRATION,
U.S. DEPARTMENT OF TRANSPORTATION

Respondents.

_____

ON PETITION FOR REVIEW
_____

**BRIEF FOR RESPONDENTS**
_____

MARC L. WARREN
 *Acting Chief Counsel*

RICHARD H. SALTSMAN
 *Assistant Chief Counsel*
  *for Litigation and General Law*

BRADLEY J. PREAMBLE
 *Trial Attorney*
 *Litigation Division*
 *Office of the Chief Counsel*
 *Federal Aviation Administration*
 *800 Independence Avenue, S.W.*
 *Washington, D.C. 20591*
 *(202) 385-8223 Tel.*

**CERTIFICATE AS TO PARTIES, RULINGS, AND RELATED CASES**

Under D.C. Circuit Rule 28(a)(1), the undersigned counsel certifies as follows:

A. *Parties and Amici*: All parties, intervenors, and amici appearing in this

Court are listed in petitioner's brief.

B. *Rulings Under Review*: The rulings at issue appear in petitioner's brief.

C. *Related Cases*: There are no related cases.

  */s/ Bradley J. Preamble*
BRADLEY J. PREAMBLE
  *Trial Attorney*
  *Litigation Division*
  *Office of the Chief Counsel*
  *Federal Aviation Administration*
  *800 Independence Avenue, S.W.*
  *Washington, D.C. 20591*
  *(202) 385-8223 Tel.*

Dated: November 1, 2013

# TABLE OF CONTENTS

Page

STATEMENT OF JURISDICTION.........................................................................1

STATEMENT OF THE ISSUES...........................................................................2

STATUTES AND REGULATIONS.......................................................................2

STATEMENT OF THE CASE...............................................................................2

STATEMENT OF THE FACTS ............................................................................3

    **A. Statutory and Regulatory Framework** ......................................................3

        1. <u>Statutory Background</u>.......................................................................3

        2. <u>Regulatory Background</u>....................................................................4

    **B. FAA Internal Procedures Applicable to DPEs** ......................................5

    **C. DPE Duties and Responsibilities** ...........................................................8

    **D. Mr. Sheble's Unsatisfactory Performance and Termination** .............10

SUMMARY OF ARGUMENT ............................................................................17

STANDARD OF REVIEW ..................................................................................19

ARGUMENT .......................................................................................................20

    I.    THE FAA'S DECISION TO TERMINATE
        MR. SHEBLE'S DPE APPOINTMENT IS
        NOT SUBJECT TO JUDICIAL REVIEW.........................................20

II.   THE FAA FOLLOWED ALL OF ITS INTERNAL
      PROCEDURES APPLICABLE TO MR. SHEBLE'S
      DESIGNEE TERMINATION ........................................................................ 21

III.  MR. SHEBLE WAS NOT SUBSTANTIALLY PREJUDICED ......... 24


CONCLUSION ........................................................................................................29

CERTIFICATE OF COMPLIANCE ......................................................................30

CERTIFICATE OF SERVICE ...............................................................................31

ADDENDUM

# TABLE OF AUTHORITIES

**Cases:** **Page**

*Adams v. Fed. Aviation Admin.*,
   1 F.3d 955 (D.C. Cir. 1993) ...................................................................21

*Charlima, Inc. v. United States*,
   873 F.2d 1078 (8th Cir. 1989) ............................................................3, 4

*Citizens to Preserve Overton Park, Inc. v. Volpe*,
   401 U.S. 402 (1971) ...............................................................................20

*Clark Cnty. Nev. v. Fed. Aviation Admin.*,
   522 F.3d 437 (D.C. Cir. 2008) .........................................................19, 20

*Fried v. Hinson*,
   78 F.3d 688 (D.C. Cir. 1996) .................................................................24

*Greenwood v. Fed. Aviation Admin.*,
   28 F.3d 971 (9th Cir. 1994) ...................................................................21

*Heckler v. Chaney*,
   470 U.S. 821 (1985).................................................................................20

*New York Cross Harbor R.R. v. Surface Transp. Bd.*,
   374 F.3d 1177 (D.C. Cir. 2004) .......................................................19, 20

*Sierra Club v. Jackson*,
   648 F.3d 848 (D.C. Cir. 2011) ...............................................................20

*Steenholdt v. Fed. Aviation Admin.*,
   314 F.3d 633 (D.C. Cir. 2003)......................................................21, 22, 24

**Statutes:**

Civil Aeronautics Act of 1938, Pub. L. No. 858, 64 Stat. 1079 ...............................4

*5 U.S.C. § 701(a)(2)........................................................................20, 21

5 U.S.C. § 706(2)(A) ..................................................................19

18 U.S.C. § 208 ........................................................................27

49 U.S.C. § 44702(d)(1) .........................................................3, 4, 5

*49 U.S.C. § 44702(d)(2) .....................................................1, 2, 4, 21

49 U.S.C. § 44703 ......................................................................5

49 U.S.C. § 46110(a) ..................................................................1

49 U.S.C. § 46110(c) .................................................................20

**Regulations:**

14 C.F.R. pt. 183 ....................................................................4, 21

14 C.F.R. § 183.11(b) .................................................................5

14 C.F.R. § 183.13(b) .................................................................5

*14 C.F.R. § 183.15(b)(6) .........................................................5, 21

**Legislative Materials:**

H.R. Rep. No. 81-3047 (1950) .....................................................3, 4

**Other Authorities:**

*FAA Order 8900.1, change 95,
  Flight Standards Information Management
  System (2010) ................................................. 5, 6, 7, 16, 22, 23, 24

FAA Order 8900.2, change 1,
  General Aviation Airman Designee Handbook (2010) ....................5, 8, 9, 10, 24

FAA Order S-8081-5F,
 Airline Transport Pilot and Aircraft Type Rating
 Practical Test Standards for Airplane (2008) .....................................................8, 9

* An asterisk denotes authorities chiefly relied upon.

# GLOSSARY OF ACRONYMS

APA          Administrative Procedure Act

ATP          Airline Transport Pilot

DPE         Designated Pilot Examiner

FAA         Federal Aviation Administration

FSDO      Flight Standards District Office

MEL        Multi-engine Land

SEED      Special Emphasis Evaluation-Designee

_____
_____

IN THE UNITED STATES COURT OF APPEALS
FOR THE DISTRICT OF COLUMBIA CIRCUIT
_____

No. 13–1136
_____

JOSEPH F. SHEBLE III,

Petitioner,

v.

MICHAEL P. HUERTA, Administrator,
FEDERAL AVIATION ADMINISTRATION,
U.S. DEPARTMENT OF TRANSPORTATION

Respondents.
_____

ON PETITION FOR REVIEW
_____

BRIEF FOR RESPONDENTS
_____

**STATEMENT OF JURISDICTION**

Petitioner Joseph F. Sheble III seeks review of a final decision dated February 15,

2013, by the Federal Aviation Administration (FAA) terminating his appointment as

a "designated pilot examiner" (DPE) under 49 U.S.C. § 44702(d)(2). Mr. Sheble

filed a timely petition for review in this Court on April 16, 2013. This Court has

jurisdiction under 49 U.S.C. § 46110(a), which provides the U.S. Court of Appeals

with the exclusive jurisdiction to review final orders with respect to the
Administrator's safety duties and powers, including designee terminations under
§ 44702(d)(2).

## STATEMENT OF THE ISSUES

Whether the FAA complied with its internal procedures when it terminated Mr.
Sheble's DPE appointment.

## STATUTES AND REGULATIONS

Applicable statutes and regulations are in a separately bound addendum to this
brief.

## STATEMENT OF THE CASE

Mr. Sheble is a former designated pilot examiner (DPE). A DPE is a private
person, *i.e.*, not a federal employee, who conducts pilot examinations and issues
pilot certificates on behalf of the FAA.

Mr. Sheble satisfactorily served as a DPE for many years. Beginning in 2011,
however, the FAA's evaluations of his performance revealed serious deficiencies.
The FAA provided Mr. Sheble with remedial training, but subsequent evaluations
again revealed deficiencies in his performance. As a result, the Las Vegas Flight
Standards District Office (FSDO) manager terminated Mr. Sheble's DPE
appointment on December 21, 2012, in accordance with FAA internal procedures.
Mr. Sheble submitted an administrative appeal. The FAA considered his appeal,

but found no justification to warrant his reinstatement. The FAA's Western-Pacific regional office notified Mr. Sheble of its final termination decision on February 15, 2013. Mr. Sheble subsequently filed a petition for review in this Court.

## STATEMENT OF THE FACTS

### A. Statutory and Regulatory Framework

1. <u>Statutory Background</u>

Since at least 1927, the federal government has used private persons to examine, test, and inspect aircraft as part of the system for managing aviation safety. The FAA's predecessor agency, the Civil Aeronautics Administration, established a formal designee program in the 1940s. The designee program later expanded to testing and certification of pilots. Today, designees may issue airman and aircraft airworthiness certificates, conduct evaluations, and administer pilot examinations. 49 U.S.C. § 44702(d)(1).

Use of designees conserves federal dollars and keeps the FAA nimble and responsive to needs of the aviation industry. The legislative history of the Civil Aeronautics Act noted the designee program's success in obviating the Civil Aeronautics Administration's need to employ "10,000 additional personnel to carry out safety inspection services." H.R. Rep. No. 81-3047, at 3 (1950). The designee program also eased the burden of regulation on the aviation community by expediting the issuance of requested certificates. *See Charlima, Inc. v. United*

3

*States*, 873 F.2d 1078, 1081 (8th Cir. 1989). For example, in the airworthiness context, the FAA may quickly appoint designees to conduct tests on newly proposed airplane designs and terminate designees when design certification is achieved.[1]

The Administrator has broad discretion to "rescind" a designation and may do so "at any time for any reason the Administrator deems appropriate." § 44702(d)(2). This broad grant of discretion first appeared in the 1950 amendments to the Civil Aeronautics Act of 1938, Pub. L. No. 858, 64 Stat. 1079. Congress intended this discretionary authority to serve as a safeguard "for the protection of the public." H.R. Rep. No. 81-3047, at 3 (1950). In other words, the Administrator's unfettered discretion to terminate a designation was a significant part of the aviation safety framework created by Congress.

## 2. Regulatory Background

Like all designees, DPEs are subject to the "regulations, supervision, and review the Administrator may prescribe." 49 U.S.C. § 44702(d)(1). Regulations prescribing the appointment, termination, and privileges of designees are published under 14 C.F.R. pt. 183.

---

[1] Designees are not considered federal employees or paid by the government. *See id.* Designees are permitted to set their own fees, which are typically paid by the applicant and serve as the *quid pro quo* for performing the FAA's work. *Id.*

4

Typically, designees are appointed by a local FSDO. The office manager

appoints a DPE after determining there is a need. 14 C.F.R. § 183.11(b). Appointed

DPEs receive a written authorization[2] with an explicit expiration date.[3] § 183.13(b).

A DPE's authority terminates upon expiration of the authorization. The FAA may

terminate a DPE appointment sooner for "any reason the Administrator considers

appropriate." § 183.15(b)(6).

### B. FAA Internal Procedures Applicable to DPEs

Local FAA FSDOs follow FAA internal procedures to accomplish oversight of

the general aviation DPE population. These procedures are set forth in FAA Order

8900.1, change 95, Flight Standards Information Management System (2010)

[*hereinafter* FAA Order 8900.1].

The FAA's evaluations of DPEs are an important part of the oversight scheme.

Evaluations occur annually at a minimum, but sometimes more frequently

depending on the circumstances. FAA Order 8900.1, vol. 13, ch. 6, § 1, at 2.

---

[2]  A designee's authorization should not be confused with airman certificates
issued under 49 U.S.C. § 44703. An airman certificate permits a person to act as
pilot-in-command of an aircraft, and a different statutory and regulatory framework
governs the Administrator's authority to issue, suspend, and revoke airman
certificates. A DPE's airman certificates are not affected by agency decisions made
with regard to his or her authorization, which pertains only to the designee
appointment under § 44702(d)(1).

[3]  The duration of a designee's initial appointment is twelve months. After the
initial appointment, the duration is at the discretion of the FAA managing office
but cannot exceed thirty-six months. FAA Order 8900.2, change 1, General
Aviation Airman Designee Handbook, ch. 3, § 5, at 3-2–3-3. (2010).

During an evaluation, the FAA inspector assesses the DPE's proficiency by (1) observing the DPE administer both the oral and flight portion of an actual pilot practical test, (2) role-playing as an applicant for a practical test, or (3) flying with the DPE to examine his or her airmanship and knowledge of the test standards. *Id.* at 4. The FAA inspector discusses the outcome with the DPE, including any deficiencies. *Id.* at 5-6.

The FAA may select a DPE for another type of evaluation called a Special Emphasis Evaluation-Designee (SEED). *Id.* at vol. 13, ch. 5, § 5.[4] A SEED is an in-depth evaluation conducted by a team of FAA inspectors who are typically from a FAA regional office, FAA headquarters, and/or another FSDO. *Id.* at 1, 4. A SEED evaluation usually lasts three days and includes an analysis of the DPE's testing activity and observation of the DPE conducting a practical test. *Id.* at 2, 4. Findings and recommendations of the SEED evaluation team are documented and forwarded to the local FSDO manager for appropriate action. *Id.* at 7.

When the FAA finds deficiencies in a DPE's performance through evaluations, the FSDO responsible for the DPE's oversight has the discretion to counsel the

---

[4] The FAA did not incorporate the SEED evaluation procedures into FAA Order 8900.1 until February 28, 2013. However, the SEED evaluation program was in place at the time of Mr. Sheble's first SEED evaluation, and FAA inspectors conducting SEED evaluations were following draft SEED evaluation guidance, which was not materially different from the adopted procedures. A copy of the draft SEED evaluation guidance followed by the inspectors who conducted Mr. Sheble's SEED evaluations is in the addendum to this brief. (Resp'ts' Addendum at 59.)

DPE, assign remedial training, and/or place limitations on the designation. FAA Order 8900.1, vol. 13, ch. 5, § 2, at 8. The FSDO manager may also terminate or not renew the DPE's designation. *Id.*

FAA Order 8900.1 provides instructions to FAA employees on how to terminate a DPE in instances where his or her performance becomes unsatisfactory. Vol. 13, ch. 5, § 3. The FSDO manager may initially communicate the termination verbally, and the DPE must immediately cease exercising his or her designee privileges. *Id.* at 5. The FSDO manager subsequently notifies the DPE in writing and includes the specific reasons for termination. *Id.* at 5. FAA Order 8900.1 includes termination letter templates, which provide the FSDO manager with exact verbiage to use. *Id.* at 3, fig. 13-4.

Internal procedures permit a DPE who was terminated for unsatisfactory performance to file an administrative appeal. The designee must submit his or her appeal to the FAA within fourteen calendar days and include any information the DPE wishes the FAA to consider. *Id.* at 6. The FAA manager forwards the appeal to the regional division manager, who convenes a three-person appeal panel. *Id.* The appeal panel reviews the termination, including the appeal, and renders a decision within forty-five calendar days after the appeal was received. *Id.* The appeal panel's decision is final. *Id.*

### C. DPE Duties and Responsibilities

A DPE's basic functions are to conduct practical tests and issue pilot certificates or ratings to applicants. The procedures to carry out these functions are in FAA Order 8900.2, change 1, General Aviation Airman Designee Handbook (2010) [*hereinafter* FAA Order 8900.2]. DPEs begin the process of certificating a pilot by preparing to administer the practical test, preferably in advance of the applicant's test date.

A DPE prepares to administer the practical test by developing a plan of action, which must be specifically tailored to the applicant. *Id.* ch. 7, at 7-15. A plan of action includes (1) preplanning for the flight portion of the practical test, (2) a pretest briefing for the applicant, (3) preparation of oral questions the DPE will ask the applicant, (4) a preflight briefing (covering items such as how the flight test will be conducted, transfer of control, emergencies, and collision avoidance), and (5) a list of "special emphasis"[5] subject areas the DPE must cover with the applicant. *Id.* at 7-201.

If the applicant meets eligibility prerequisites, the practical test begins. The practical test consists of two basic components, oral and flight. In the oral portion,

---

[5]  The test standards for each certificate/rating sought contain special emphasis areas. A special emphasis area is an operation considered critical to flight safety, such as stall/spin awareness or collision avoidance procedures. *See, e.g.*, FAA Order S-8081-5F, Airline Transport Pilot and Aircraft Type Rating Practical Test Standards for Airplane, at 8 (2008).

the DPE evaluates the applicant's aeronautical knowledge through a series of

questions. *Id.* at 7-28. The applicant's airmanship is evaluated during the flight

test. *Id.* at 7-29.

Several specific requirements apply to the oral questioning. The questions must

target different levels of learning, for example, rote, understanding, application,

and correlation. *Id.* at 7-201. The DPE cannot provide training during questioning

or ask questions in a way that suggests the answer. *Id.* at 7-28. Questions must

cover the "special emphasis" areas identified in the written plan of action and the

required "areas of operation" relative to the type of certificate sought, e.g., private

pilot, commercial pilot, airline transport pilot, etc. For example, when conducting

an airline transport pilot certification, a DPE must use the current version of the

FAA's test standards to ensure every area of operation is covered. *Id.* at 7-97.

(incorporating by reference, FAA Order S-8081-5F, Airline Transport Pilot and

Aircraft Type Rating Practical Test Standards for Airplane (2008)). Lastly, the

applicant provides results from a written knowledge test taken beforehand, and the

DPE must emphasize the specific subjects the applicant incorrectly answered. FAA

Order 8900.2, ch. 7, at 7-28. The DPE must disapprove an applicant who

consistently gives incorrect, confused, or unrelated answers. *Id.* at 7-28.

FAA Order 8900.2 also covers the testing procedure and environment. The

testing area must be free from distractions. *Id.* at 7-15. The DPE must inform the

9

applicant of available equipment, e.g., flight hood, and restrooms. *Id.* at 7-201, fig.

7-8A. Finally, the DPE must announce, "THE TEST HAS BEGUN!" *Id.*

### D. Mr. Sheble's Unsatisfactory Performance and Termination

In 2011, the FAA's Designee Quality Assurance Branch based in Oklahoma

City, Oklahoma, conducted a risk assessment for all 1013 DPEs nationwide. (J.A.

at A4.) The risk assessment was based on data collected by the FAA, such as the

number of applicants tested by each DPE, pass rates, and post-certification events.

(See Id.) A post-certification event is an accident or incident involving an airman

who was certificated by a DPE.

The risk assessment identified Mr. Sheble as one of the six highest risk DPEs in

the entire country. (Id.) Mr. Sheble conducted a very high number of practical tests

and had a high pass rate compared to other DPEs. The pilots he passed also had a

higher rate of post-certification events. For these reasons, the FAA selected Mr.

Sheble to receive a SEED evaluation in September 2011. Seven FAA inspectors

participated in the September 2011 SEED evaluation. (J.A. at A4.)

The September 2011 SEED evaluation noted serious deficiencies in Mr.

Sheble's DPE performance. (J.A. at A7-A8.) Two FAA inspectors observed Mr.

Sheble conduct an actual practical test for a commercial pilot seeking a seaplane

rating. (J.A. at A5.) Their observations were, in part, that Mr. Sheble's copy of the

FAA's test standards was outdated, that he asked the applicant leading questions,

10

and that he sometimes finished the answer for the applicant. (J.A. at A5, A8.) Also during the oral test, they observed Mr. Sheble tell the applicant, "We'll come back to that later" after hearing an inadequate response, but Mr. Sheble never made a note to follow up. (J.A. at A5.) Mr. Sheble did not cover mandatory "areas of operation" during the oral portion of the practical test, and a post-flight interview of the applicant led inspectors to believe that Mr. Sheble failed to test on mandatory maneuvers during the flight portion. (J.A. at A5-A6.)

The FAA notified Mr. Sheble of his unsatisfactory SEED evaluation results on September 26, 2011. (J.A. at A1-A2.) The FAA required Mr. Sheble to take remedial training and limited his DPE authorization to one practical test per day. (J.A. at A2.) In January 2012, he completed remedial training by attending a week-long seminar in Oklahoma City for newly appointed DPEs. (J.A. at A98.)

The FAA continued to find deficiencies in Mr. Sheble's performance despite his completion of remedial training. During an evaluation on April 9, 2012, an inspector from the Las Vegas FSDO observed Mr. Sheble conduct an Airline Transport Pilot (ATP) practical test. (J.A. at A87-A88.) The inspector found that Mr. Sheble was not familiar with an FAA requirement to conduct two precision approaches with each applicant; Mr. Sheble had planned for only one precision approach. (J.A. at A88.) Also, the applicant inadequately answered a question

concerning alternate airport requirements[6]; Mr. Sheble stated he would return to

the question but never did. (J.A. at A89.) The test was eventually discontinued,

because the FAA inspector noticed that the emergency locator transmitter battery

was out-of-date. (Id.) Mr. Sheble and the applicant did not notice the out-of-date

battery, although they were responsible for doing so. (Id.) The out-of-date battery

made the airplane unairworthy. (Id.)

An inspector from the Las Vegas FSDO subsequently evaluated Mr. Sheble on

July 12, 2012, and again found deficiencies. (J.A. at A85-A86.) On this occasion,

Mr. Sheble inappropriately used non-verbal communication to assist an applicant

in answering a question about inflight engine fire procedures. (J.A. at A86.) The

FAA inspector also counseled Mr. Sheble about his evaluation of the applicant's

aircraft control and aeronautical decision-making during the landing phase of

flight. (Id.)

On November 26, 2012, three FAA inspectors conducted a second SEED

evaluation of Mr. Sheble and yet again found deficiencies. (J.A. at A18-A29.)

Concerning Mr. Sheble's preparation to administer the practical test, all of the

inspectors agreed that Mr. Sheble was not prepared. Mr. Sheble did not have an

adequate plan of action and had not reviewed the applicant's incorrect answers

from the knowledge test. (J.A. A20, A28.) He had not reviewed and was not

---

[6]  Alternate airports is not a relevant topic for an ATP test.

familiar with the prerequisite eligibility requirements for applicant, who was

seeking an ATP Multi-engine Land certificate. (J.A. at A28.)

The three inspectors observed Mr. Sheble conduct the oral portion of the

practical test and concluded that Mr. Sheble's performance was well below the

accepted FAA test standards. Several of the oral test questions Mr. Sheble asked

were irrelevant to the certificate sought by the applicant. (J.A. at A20.) Mr. Sheble

also did not cover a majority of the required testing material. (J.A. at A23.) He

completely omitted several subject areas, including nine out of fifteen FAA-

designated special emphasis subjects. (J.A. at A23.) The questions Mr. Sheble did

ask were only "rote" level (calling for mechanical, habitual repetition by the

applicant of learned material). (J.A. at A21, A28.) He did not ask questions to

assess the "understanding," "application," and "correlation" levels of learning. (Id.)

Further, he showed a lack of technical knowledge when he accepted incorrect

answers. (J.A. at A22.)

At one point during the oral test, Mr. Sheble asked an off-topic question

concerning alternate airports, which the applicant incorrectly answered. (J.A. at

A25.)  Mr. Sheble discontinued the test, announcing "It's over!" and failed the

applicant. (Id.) An FAA inspector counseled Mr. Sheble that failing an applicant

for incorrectly answering a question on material not contained in the test standards

may be difficult to defend and that he should stick to the test standards. (Id.) Mr.

Sheble stated that he understood but insisted that the question was important. (Id.)

The three FAA inspectors met without Mr. Sheble and the applicant to discuss Mr. Sheble's performance. (Id.) They all agreed that Mr. Sheble performed unsatisfactorily because he omitted required testing material, failed to test beyond the "rote" level, missed briefing items, and tested outside the appropriate test standards. (Id.)

In addition to Mr. Sheble's shortcomings regarding the substance of the oral test, the SEED evaluation team noted several deficiencies in Mr. Sheble's testing procedure and environment. One knock at the door and eleven telephone calls interrupted the test. (J.A. at A20.) Mr. Sheble's pretest briefing was inadequate. (Id.) He failed to provide the applicant with (1) a general overview of the test, (2) information about available restrooms and required equipment, (3) a reminder that he would be taking notes, but "perfection is not the standard," and (4) an announcement that "THE TEST HAS BEGUN!" (Id.)

Michelle Brown, an FAA inspector assigned as the second SEED evaluation team lead, debriefed Mr. Sheble about his unsatisfactory performance before she left Sheble Aviation, Mr. Sheble's flight school, on the day of the second SEED evaluation. (J.A. at A25.) She told Mr. Sheble to cease further testing until he coordinated with the Las Vegas FSDO. (Id.)

14

On November 28, 2012, FAA inspector Anthony Roldan telephoned Mr. Sheble to discuss the SEED evaluation's preliminary findings and confirm his suspension. (J.A. at A11.) Mr. Roldan was Mr. Sheble's point of contact at the Las Vegas FSDO. Right after the call, Mr. Roldan followed up with an email stating, "The privileges of your DPE Authority are suspended until further review of the SEED evaluation can be accomplished." (Id.)

Within hours, Mr. Sheble responded by email with a detailed, three-page response. (J.A. at A12-A15.) His response focused on the SEED evaluation team lead's debrief. (J.A. at A13-A15.) Mr. Sheble disputed that he did not review the applicant's knowledge test results and that he discontinued the oral test based on an incorrect answer to an irrelevant question. (J.A. at A13.) He disputed that his questions were only "rote" level and claimed that he asked questions at the "describe" and "explain" levels of learning. (J.A. at A14.) He also disputed that he asked questions not relevant to the applicable test standards. (Id.) He further disputed another inspector's comment that the applicant was stumbling on aircraft systems. (J.A. at A15.) Finally, Mr. Sheble alleged that the SEED evaluation team lead accused him of failing the applicant on purpose. (Id.)

The FAA SEED evaluation team submitted its report on December 3, 2012, recommending that the Las Vegas FSDO manager terminate Mr. Sheble's DPE appointment based on the recent SEED unsatisfactory evaluation and Mr. Sheble's

15

prior deficiencies. (J.A. at A16-A29.) After reviewing Mr. Sheble's file and email

response, Reid Walburg, the acting manager of the Las Vegas FSDO, accepted the

team's recommendation and terminated Mr. Sheble's DPE appointment by letter

dated December 21, 2012. (J.A. at A32.) The letter advised in part:

> Your designation is being terminated for not performing your
> duties under your designation in accordance with current FAA
> guidance and policy.  (FAA Order 8900.2, Chapter 7 and the
> current Practical Test Standards for the test being
> administered[.])

(Id.) The letter also disclosed the second SEED evaluation findings.

Mr. Sheble timely submitted an administrative appeal on January 16, 2012.

(J.A. at A39-A43.) The appeal included a detailed rebuttal to each finding specified

in Mr. Walburg's letter and asserted that the termination basis stated in Mr.

Walburg's letter lacked specificity. (J.A. at A39.) Mr. Sheble also asserted Ms.

Brown had a conflict of interest. (J.A. at A40.) At the time of the second SEED

evaluation, Ms. Brown was engaged to another FAA inspector who had inspected

Sheble Aviation's airplanes over a decade earlier, in 2001. (See J.A. at A40.)

On February 5, 2013, the FAA Flight Standards Division in the Western-Pacific

Region convened an appeal panel in accordance with FAA Order 8900.1 and

reviewed Mr. Sheble's DPE termination. (J.A. at A96.) By letter dated February 5,

2013, the FAA advised Mr. Sheble of its final decision, which found no

"justification to warrant reinstatement of your designation as a DPE." (Id.)

16

## SUMMARY OF ARGUMENT

The Federal Aviation Act authorizes the Administrator to terminate a designee's appointment at any time and for any reason. The FAA incorporated this broad grant of discretion into the Federal Aviation Regulations, which also permit the Administrator to terminate a designee appointment for any reason deemed appropriate. Because the Administrator's discretion lacks any constraints, there are no judicially manageable standards by which the Court can judge the Administrator's action. Designee terminations are thus committed to agency discretion by law and are not reviewable. Mr. Sheble does not challenge this well-settled principle or the substance of the Administrator's decision to terminate his DPE appointment.

Instead, Mr. Sheble asks this Court to review the FAA's application of its internal procedures. The Court should find that the FAA complied with all of its internal procedures applicable to Mr. Sheble's DPE appointment termination. The FAA notified Mr. Sheble of his DPE termination, gave him a specified termination reason with context and evidence of his deficiencies the FAA observed, allowed an administrative appeal, considered all the issues he raised on appeal, and complied with its requirements to decide Mr. Sheble's appeal in a timely manner.

Nor did any of the asserted procedural errors cited by Mr. Sheble, assuming *arguendo* there were errors, cause him prejudice. Foremost, the agency's concerns

17

about his performance should not have surprised Mr. Sheble. The FAA debriefed Mr. Sheble on every occasion in the past few years where it observed deficiencies in his performance. He can hardly claim surprise or ignorance of his deficiencies when he was required to, and did, attend remedial training sessions. With respect to the second SEED evaluation, which led to his termination, the FAA again debriefed Mr. Sheble. The agency provided him an opportunity to respond and he did so verbally on two occasions. He also formally responded via email and subsequently submitted an appeal after he received the FAA's termination notice. He had access to all the information he needed to formulate a comprehensive administrative appeal.

Mr. Sheble alleges that he was substantially prejudiced, in part, because of an alleged conflict of interest. Michelle Brown, the second SEED evaluation team lead, was engaged to another FAA employee, who last conducted an inspection on Mr. Sheble's flight school over a decade ago in 2001. According to Mr. Sheble, Mr. Prine was doing "all possible" to get his DPE appointment terminated. Conflicts of interest occur where a federal employee has a financial interest in a matter. No evidence exists of any financial interest, let alone one that would have created a conflict of interest for Ms. Brown. Nor do the facts support the allegation that Ms. Brown lacked impartiality or that her husband's prior investigations of

18

Sheble Aviation over ten years earlier required her recusal from the second SEED evaluation.

Regardless, Mr. Sheble cannot show that the result would have been different had Ms. Brown recused herself. The termination decision was based on the collective observations and input of nearly a dozen FAA inspectors in addition to Ms. Brown. The Las Vegas FSDO manager made an independent decision to terminate Mr. Sheble's DPE appointment. And an independent appeal panel of three inspectors found no justification to warrant reinstatement after considering Mr. Sheble's administrative appeal. The Court should deny his petition for review.

## STANDARD OF REVIEW

When an FAA order is reviewable under the Administrative Procedure Act (APA), the Court evaluates whether the decision was "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with the law." 5 U.S.C. § 706(2)(A). *See Clark Cnty. Nev. v. Fed. Aviation Admin.*, 522 F.3d 437, 441 (D.C. Cir. 2008). The Court must uphold the decision so long as the Administrator "engaged in reasoned decision-making," and the decision "is adequately explained and supported by the record." *Clark Cnty. Nev.*, 522 F.3d at 441 (quoting *New York Cross Harbor R.R. v. Surface Transp. Bd.*, 374 F.3d 1177, 1181 (D.C. Cir. 2004)) (internal quotation marks omitted). When the FAA's factual findings are supported

by substantial evidence, they "are conclusive." 49 U.S.C. § 46110(c) (Findings of fact by the . . .Administrator, if supported, are conclusive.").

An agency action is not reviewable under the APA, when the decision "is committed to agency discretion by law." 5 U.S.C. § 701(a)(2).

## ARGUMENT

### I.     THE FAA'S DECISION TO TERMINATE MR. SHEBLE'S DPE APPOINTMENT IS NOT SUBJECT TO JUDICIAL REVIEW.

In his brief, Mr. Sheble does not seek substantive review of the Administrator's decision to terminate Mr. Sheble's DPE appointment. Indeed, Mr. Sheble could not obtain such a review, because the Administrator's decision to terminate a designee is committed to agency discretion by law. An action is committed to agency discretion by law and not reviewable under the APA where statutes are drawn so broadly that a court has "no law to apply" in a given case, *Citizens to Preserve Overton Park, Inc. v. Volpe*, 401 U.S. 402, 410 (1971) (internal citations omitted), or where "the statute is drawn so that a court would have no meaningful standard against which to judge the agency's exercise of discretion." *Sierra Club v. Jackson*, 648 F.3d 848, 855 (D.C. Cir. 2011) (quoting *Heckler v. Chaney*, 470 U.S. 821, 830 (1985) "Agency actions in these circumstances are not reviewable because the courts have no legal norms pursuant to which to evaluate the challenged action, and thus no concrete limitations to impose on the agency's exercise of discretion.").

20

This Court and the Ninth Circuit have held that the Administrator's designee decisions are excluded from judicial review because they are actions "committed to agency discretion by law" under 5 U.S.C. § 701(a)(2). *Steenholdt v. Fed. Aviation Admin*, 314 F.3d 633, 639 (D.C. Cir. 2003) (Designated Engineering Representative non-renewal is not reviewable); *Greenwood v. Fed. Aviation Admin.*, 28 F.3d 971, 974-75 (9th Cir. 1994) (DPE's temporary suspension is not reviewable); *Adams v. Fed. Aviation Admin.*, 1 F.3d 955, 956 (9th Cir. 1993) (DPE non-renewal is not reviewable). In *Steenholdt*, the Court found 49 U.S.C. § 44702(d)(2) to "very clearly" give the Administrator unfettered discretion because a decision made "at any time and for any reason" gave "no constraints on the Administrator's discretion" 314 F.3d at 638-39. The Court also examined the FAA's designee regulations under 14 C.F.R. pt. 183 and concluded that they "also give the Administrator unfettered discretion, in that they allow rescission of a designation 'for any reason the Administrator considers appropriate.'" *Id.* at 638 (citing 14 C.F.R. § 183.15(b)(6)). It necessarily follows that there are "certainly no judicially manageable standards by which to judge the Administrator's action." *Id.*

II.     THE FAA FOLLOWED ALL OF ITS INTERNAL PROCEDURES APPLICABLE TO MR. SHEBLE'S DESIGNEE TERMINATION.

With any substantive review foreclosed, Mr. Sheble alleges that the FAA did not follow its internal procedures applicable to the termination of DPE appointments. This Court has reviewed similar claims to determine whether the

21

agency's action was in substantial compliance with its internal procedures and, if

not, whether a petitioner has demonstrated that any procedural irregularity caused

him or her substantial prejudice. *See Steenholdt*, 314 F.3d at 640.

The record clearly demonstrates that the FAA followed all of its internal

procedures applicable to the termination of Mr. Sheble's DPE appointment. When

a FSDO decides to terminate a designee for cause, the FAA office manager will

first notify the designee in writing. FAA Order 8900.1, vol. 13, ch. 5, § 3, at 5. The

FAA complied; Mr. Sheble received the DPE termination notice on January 3,

2013. (J.A. at A35.) The designee may appeal the termination within fourteen

calendar days after receipt of the termination notification. FAA Order 8900.1, vol.

13, ch. 5, § 3, at 6. Mr. Sheble filed a timely appeal on January 16, 2013. (J.A. at

A39.) Next, a regional appeal panel reviews the termination decision and makes a

decision within forty-five calendar days of the appeal. FAA Order 8900.1, vol. 13,

ch. 5, § 3, at 6. The FAA complied. An appeal panel convened on February 5,

2013. (J.A. at A96.) Finally, the appeal panel notifies the designee of its decision in

writing within fifteen days of its decision. FAA Order 8900.1, vol. 13, ch. 5, § 3, at

6. Also in compliance, the appeal panel mailed its final decision to Mr. Sheble on

February 15, 2013. (J.A. at A96.)

Mr. Sheble takes issue with the Las Vegas FSDO manager's initial termination

decision dated December 21, 2012, claiming that it did not state the reasons for his

termination "as specifically as possible." (Pet'r's Br. at 15.) FAA Order 8900.1, which FAA employees follow, does instruct the FSDO manager to provide the designee with the termination reasons in writing and "cited as specifically as possible." Vol. 13, ch. 5, § 3, at 5. However, FAA Order 8900.1, complete with step-by-step instructions, associated figures and templates, explains to a FSDO manager exactly how to write a termination reason "as specifically as possible." The order includes a template letter, which guides the manager to (1) select from one of two text options, and (2) cite the regulations or policies violated by the designee, as shown below in a paragraph excerpted from the template:

> Your designation is being terminated [for not performing your duties under your designation **OR** because you no longer meet the eligibility requirements for the designation.] [Cite the reference to the regulations/ policy that was violated/noncompliance.]

(emphasis added). FAA Order 8900.1, vol. 13, ch. 5, § 3, at 3 fig. 13-4.

Mr. Sheble's termination letter followed this template. (J.A. at A32.) The Las Vegas FSDO manager selected the first termination reason and pasted the text verbatim into Mr. Sheble's termination letter. (Id.) The letter also included references to the regulations and policy that Mr. Sheble failed to follow: "FAA Order 8900.2, [c]h. 7 and the current Practical Test Standards for the test being administered." (Id.)

Although not required under FAA Order 8900.1, the termination letter gave Mr. Sheble additional context to the Las Vegas FSDO manager's decision. (Id.) It

23

specified November 26, 2012, as the most recent date on which the FAA evaluated
his performance and provided him with the findings—all of which were previously
communicated to him both in person at the conclusion of the second SEED
evaluation and in telephone call from the FSDO on November 28, 2012. (Id.)
Dates of previous unsatisfactory evaluations were also included, demonstrating
systemic deficiencies even after the agency's attempt to rehabilitate him through
remedial training. (Id.)

In sum, the FAA fully complied with FAA Order 8900.1 from start to finish.
Mr. Sheble received a reason for his termination with context and an opportunity to
challenge the termination under established appeal procedures with the assistance
of counsel.

## III.     MR. SHEBLE WAS NOT SUBSANTIALLY PREJUDICED.

Even assuming, *arguendo*, that the FAA substantially departed from its internal
procedures in terminating Mr. Sheble's DPE appointment, as explained above, Mr.
Sheble would not be entitled to any relief from this Court because he was not
substantially prejudiced by the alleged procedural "errors" upon which he relies.
*Steenholdt*, 314 F.3d at 639; *Fried v. Hinson*, 78 F.3d 688, 690-91 (D.C. Cir.
1996).

Mr. Sheble claims he was substantially prejudiced in two ways. First, he claims
the FAA's SEED evaluation findings in the Las Vegas FSDO's termination letter

24

were too vague and general for him to formulate a comprehensive response. (Pet'r's Br. at 12.) Second, Mr. Sheble claims that Ms. Brown, the second SEED evaluation team lead, had a conflict of interest because she was engaged to another FAA inspector who was doing everything possible to revoke Mr. Sheble's DPE. (Pet'r's Br. at 16.) Neither of these contentions has merit.

First, Mr. Sheble should not have been surprised that the FAA had concerns about his performance. He had performance issues for quite some time. His second SEED evaluation in 2011 was unsatisfactory. (J.A. at A1.) Those SEED evaluation findings were sent to him in writing. (Id.) Instead of terminating his DPE appointment at that time, the FAA gave him an opportunity to improve by requiring him to take remedial training, which he did. (J.A. at A1, A98.) Follow up evaluations revealed that Mr. Sheble's deficiencies persisted. (J.A. at A27, A86-A88.) The FSDO gave Mr. Sheble feedback after those evaluations. (Id.)

The FAA also provided Mr. Sheble with ample information after the second SEED evaluation with which to understand the agency's concerns about his performance. Ms. Brown debriefed him on his unsatisfactory performance before she left Sheble Aviation on the day of the second SEED evaluation. (J.A. at A25.) The Las Vegas FSDO followed up two days later with another debrief in a telephone call. (J.A. at A11.) Although Mr. Sheble complained that the FAA did not provide specific examples related to SEED evaluation findings, he never asked

the agency to provide a copy of the SEED report or supplement the findings

disclosed in both the termination letter and oral debriefs. (See e.g., J.A. at A12-

A15, A39-A44.)

Mr. Sheble was able to formulate two comprehensive responses to the FAA's

second SEED evaluation. In the first response send by email, Mr. Sheble expressed

his disagreement with several of the second SEED evaluation team's findings,

including that he did not review the applicant's knowledge test results and that he

discontinued the observed practical test due to an incorrect answer by the applicant

to an irrelevant question. (J.A. at A13-A15.) In his written appeal, Mr. Sheble

disputed that not all test standards were covered, alleging that he would have

covered them had he not failed the applicant. (J.A. at A41.) He disputed that his

questions were only "rote" level. (J.A. at A42.) He further disputed that he asked

questions not relevant to the test standards. (Id.) Finally, he disputed that pre-test

briefing items were omitted and that he accepted incorrect or insufficient answers

from the applicant. (Id.)

Second, there is no merit to petitioner's assertion that the second SEED

evaluation team lead, Michelle Brown, had a conflict of interest or an appearance

of impropriety. Mr. Sheble asserts that Ms. Brown had a conflict of interest

because she was engaged to Randall Prine, another FAA inspector, at the time she

conducted Mr. Sheble's second SEED evaluation.

An engagement by itself does not create a conflict of interest. A conflict of interest occurs when a federal employee personally and substantially participates in a matter in which the employee or his or her spouse has a *financial interest*. 18 U.S.C. § 208. The Administrative Record does not contain any evidence of Ms. Brown's or Mr. Prine's financial interests, including any financial interest that would preclude Ms. Brown from participating in the second SEED evaluation.

Nor is there any merit to Mr. Sheble's assertion that Ms. Brown should have recused herself because her fiancé at the time, Mr. Prine was allegedly doing "all possible" to revoke Mr. Sheble's DPE appointment. Mr. Sheble simply has not alleged any facts that support this argument.[7]

During the administrative appeal process, Mr. Sheble never fully explained, beyond referring to a "negative history," why he believed Mr. Prine was targeting him. (See J.A. at 39-40.) Mr. Sheble argues that the Prine engagement, along with

---

[7] In the summer of 2000, Mr. Prine, a principal maintenance inspector at the FSDO in Scottsdale, Arizona, and three other inspectors investigated a public complaint lodged against Sheble Aviation—Mr. Sheble's flight school. The inspectors found serious safety issues with Sheble Aviation's airplanes, validating the public complaint. Mr. Prine had no further involvement with Sheble Aviation after completion of the investigation in late 2001, in part because Sheble Aviation moved its base of operations into the Las Vegas FSDO's jurisdiction shortly thereafter.

Over a dozen years later, superiors in the Western-Pacific Region in Hawthorne, California assigned Ms. Brown to lead the second Sheble SEED evaluation. Ms. Brown was engaged to Mr. Prine, who was still employed at the Scottsdale FSDO.

a pejorative comment, "ticket mill," allegedly made by both Ms. Brown and Mr. Prine, demonstrates Ms. Brown's appearance of impropriety (Pet'r's Br. at 16-17.)

Even if utterance of the words "ticket mill" could alone demonstrate an appearance of impropriety or lack of impartiality, Mr. Sheble provides no basis to support a conclusion that the result would have been any different if Ms. Brown had not been involved. First, Ms. Brown did not select Mr. Sheble for the second SEED evaluation. (See J.A. at A17.) The deputy manager of the Western-Pacific Region Flight Standards Division made the selection with the division manager's concurrence. (Id.) Second, at least eight FAA employees were involved in the recommendation and decision to terminate Mr. Sheble's DPE appointment. Ms. Brown was accompanied by two other FAA inspectors who gave input and ultimately agreed as a group to the second SEED evaluation findings and recommendation to terminate Mr. Sheble's DPE appointment. (J.A. at A17.) Ms. Brown had no supervisory role over the two other inspectors on the team. They were free to draw their own conclusions. All three inspectors observed Mr. Sheble's unsatisfactory attempt to administer the oral portion of a practical test. (J.A. at A19, A29.) Third, the Las Vegas FSDO manager made an independent decision to terminate Mr. Sheble's DPE appointment. (J.A. at A32.) Finally, an independent appeal panel of three FAA inspectors reviewed the termination decision, considered Mr. Sheble's "conflict of interest" allegations, and ultimately

28

found no justification to warrant Mr. Sheble's reinstatement. (J.A. at A96.) It is impossible to imagine how Ms. Brown's alleged impropriety or bias could have tainted the observations of so many other inspectors who evaluated Mr. Sheble and also their superiors who reviewed the findings.

## CONCLUSION

The Court should deny Mr. Sheble's petition for review.

Respectfully submitted,

MARC L. WARREN
 *Acting Chief Counsel*

RICHARD H. SALTSMAN
 *Assistant Chief Counsel*
  *for Litigation and General Law*

 */s/ Bradley J. Preamble*
BRADLEY J. PREAMBLE
 *Trial Attorney*
 *Litigation Division*
Of counsel:                          *Office of the Chief Counsel*
                                     *Federal Aviation Administration*
LINDSAY M. NAKAMURA       *800 Independence Avenue, S.W.*
 *Office of the Regional Counsel*  *Washington, D.C. 20591*
 *Western-Pacific Region*         *(202) 385-8223 Tel.*
 *Hawthorne, California 90250*

Dated: November 1, 2013

## CERTIFICATE OF COMPLIANCE

I hereby certify, under Fed. R. App. P. 32(a), that the foregoing brief contains

6267 words, according to the count of Microsoft Word 2010.


 */s/ Bradley J. Preamble*
BRADLEY J. PREAMBLE

# CERTIFICATE OF SERVICE

I hereby certify that I have served the foregoing Corrected Respondents' Brief

for *Sheble v. Huerta*, No. 13-1136 (D.C. Cir.) on November 1, 2013, to the case

participants below.

## One Copy via ECF and One Copy via U.S. Mail

JOSEPH MICHAEL LAMONACA, ESQ.
P.O. Box 10583
Wilmington, Delaware 19850-0583
(610) 558-3376
(302) 221-2347 fax
Jlamonaca@avlaw.us


                                          */s/ Bradley J. Preamble*
                                        BRADLEY J. PREAMBLE
                                        FAA Employee